**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

AVERY DENNISON CORPORATION,    )
                               )
        Plaintiff,         )
                               )
   v.                    )     No. 06 C 3390
                               )
MICHAEL A. NAIMO,          )
                               )
        Defendant.       )

**MEMORANDUM OPINION**

Before the court is defendant's motion to dismiss Count IV of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion is granted.

**BACKGROUND**

This is an action in which plaintiff Avery Dennison Corporation ("Avery") alleges that after it terminated the employment of defendant Michael A. Naimo, Naimo breached an Employment Agreement and a Separation Agreement by competing with Avery and by using Avery's confidential and trade-secret information.

The complaint alleges the following facts, which we take as true for purposes of the instant motion. Until December 12, 2005, Naimo was employed by Avery as a regional sales director for one of its divisions. The parties entered into a "Separation Agreement

and General Release" (the "Separation Agreement"), the relevant terms of which are as follows:

> This Separation Agreement and General Release ("Agreement") is made by and between Michael Naimo ("Employee") and Avery Dennison Corporation, a Delaware corporation ("Avery") effective this 12th day of December, 2005.

> Employee is currently party to an Employment Agreement with RVL Packaging, Inc. ("RVL"). RVL is a wholly-owned subsidiary of Avery. . . . Employee and Avery agree to the following terms in full and final settlement of all matters relating to or arising out of Employee's employment and separation from employment with Avery and/or RVL:

> 1. Employee's employment with Avery shall end as of December 12, 2005.

> 2. It is agreed that, for the promises made herein, Employee will receive the following consideration:
> The applicable payments set forth in Section 5(c) of the Employment Agreement, dated September 1, 2003, by and between RVL Packaging, Inc. and Employee. . . . . . .

> 4. Employee represents that he/she has carefully read and fully understands all the provisions of this Agreement and has had an adequate opportunity to discuss all aspects of this Agreement with an attorney of his/her own choosing, if desired.
> . . .

> 9. Employee understands and agrees that in the course of employment with Avery, he/she may have acquired confidential information and trade secrets concerning Avery's operations, its future plans and methods of doing business, including, without limitation, proprietary information about its products, product development, customers, research, technology, financial circumstances, marketing, pricing, costs, compensation and other matters (hereinafter collectively "Trade Secrets"). Employee may not reveal or disclose, sell, use, lecture upon, or publish any such Trade Secrets, or authorize anyone else to do so at any time subsequent to his/her employment with Avery. . . .

10.   This  Agreement  shall  be  governed  by  and
interpreted and construed in accordance with the laws of
the State of Illinois. . . .
. . .

12.   This  Agreement  is  the  only  and  complete
agreement between Employee and Avery on or in any way
relating to the subject matter hereof, and supersedes all
previous agreements, including, without limitation, the
Employment  Agreement,  except  to  the  extent  such
Employment  Agreement  (and  the  payment  obligation  set
forth therein) is specifically referenced in Section 2 of
this  Agreement.  .  .  .  No  statements,  promises  or
representations have been made by either party to the
other  and  no  consideration  has  been  or  is  offered,
promised or expected other than that already received or
described in this Agreement.
. . .

14. From the date Employee receives this Agreement,
he/she has twenty-one (21) days to consider it. . . .

(Compl., Ex. 1, Separation Agreement, at 1-3.)

The  Employment  Agreement  referred  to  in  the  Separation

Agreement  contained  a  "preservation  of  corporate  opportunity"

provision  pursuant  to  which  Naimo  had  agreed  not  to  compete  with

Avery for a period of twelve months after his employment ended.  It

also  contained  a  "trade  secrets"  provision  prohibiting  Naimo's  use

of  proprietary  information  for  the  benefit  of  anyone  other  than

Avery  after  termination  of  his  employment.   (Compl.,  Ex.  2,

Employment Agreement, at 3-4.)

Avery  alleges  that  Naimo  has  breached  both  agreements  by

making sales calls to customers for whom he was responsible while

employed by Avery and that Naimo has openly acknowledged competing

with  Avery.   In  Avery's  view,  Naimo  "has  and  continues  to

wrongfully use, intentionally and/or inevitably, the trade secrets

and confidential information of Avery." (Compl. ¶ 13.) Avery also alleges that it has made "all required payments to Naimo through June 14, 2006" (one week before the filing of the complaint) and "has otherwise fully complied with all its obligations under the Separation Agreement and the Employment Agreement." (Id. ¶ 12.)

The complaint contains four counts. Count I seeks a declaratory judgment that Avery is not obligated to continue paying Naimo severance pay because he is in breach of the Separation Agreement. Count II alleges that Naimo breached the Separation Agreement by using Avery's confidential information and trade secrets. Count III is for violation of the Illinois Trade Secrets Act, 765 ILCS 1065/2. Count IV alleges that Naimo breached the Employment Agreement by competing with Avery during the twelve-month period following the termination of his employment and by using Avery's confidential information and trade secrets.

Naimo now moves to dismiss Count IV.

## DISCUSSION

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 354 (3d ed. 2004). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Hentosh v. Herman M. Finch Univ. of Health

<u>Sciences</u>, 167 F.3d 1170, 1173 (7th Cir. 1999); <u>Jang v. A.M. Miller</u>
<u>& Assocs.</u>, 122 F.3d 480, 483 (7th Cir. 1997). Dismissal is
appropriate only if "'it is clear that no relief could be granted
under any set of facts that could be proved consistent with the
allegations.'" <u>Ledford v. Sullivan</u>, 105 F.3d 354, 356 (7th Cir.
1997) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).

Naimo argues that we should dismiss Count IV--which alleges
that he breached the Employment Agreement--because the Separation
Agreement expressly states: "This Agreement is the only and
complete agreement between Employee and Avery on or in any way
relating to the subject matter hereof, and supersedes all previous
agreements, including, without limitation, the Employment
Agreement, except to the extent such Employment Agreement (and the
payment obligation set forth therein) is specifically referenced in
Section 2 of this Agreement."

Avery contends that the Separation Agreement only superseded
prior agreements relating to its subject matter and that the narrow
subject matter of the Separation Agreement was Naimo's release of
claims against Avery. According to Avery, the non-competition
provision is not within the subject matter of the Separation
Agreement.

We are unpersuaded. The subject matter of the Separation
Agreement, as expressly stated, is "full and final settlement of
all matters relating to or arising out of Employee's employment and

separation of employment with Avery." (Separation Agreement at 1.)
The Separation Agreement, which is a fully-integrated contract,
unambigously states that the Employment Agreement is superseded by
the Separation Agreement *without limitation* except for Avery's
obligation to make severance payments to Naimo. Avery's reading of
the Separation Agreement is untenable.

Avery also argues that Naimo's "interpretation" of the
Separation Agreement "would lead to an absurd result and should be
rejected." (Pl.'s Mem. in Opp'n to Mot. at 11.) Avery evidently
believes that the Separation Agreement is capable of more than one
interpretation. It is not; the contract is unambiguous on its
face. Illinois follows the "four corners" rule, which precludes
the consideration of extrinsic evidence where a contract is
facially unambiguous and contains an integration clause. See Air
Safety, Inc. v. Teachers Realty Corp., 706 N.E.2d 882, 884 (Ill.
1999). Avery essentially wants us to consider parol evidence,
which is neither necessary nor permissible.

The Separation Agreement says, clearly and simply, that it
supersedes the Employment Agreement except with regard to severance
pay. This is not an "absurd result." Avery asserts that "[t]here
would be no logical reason for Avery Dennison, in the Separation
Agreement (or the Employment Agreement), to agree to eliminate the
non-competition agreement without receiving value in return."
(Pl.'s Mem. in Opp'n to Mot. at 11.) Avery, however, did receive

value in return:  Naimo agreed to a broad release of claims against Avery, not to disclose the agreement, and not to use or reveal confidential information.  In retrospect, Avery may believe that it made a bad deal, but the fact that the Separation Agreement does not contain a non-compete clause even though the Employment Agreement did cannot be characterized as "absurd."

Avery maintains that we should apply the doctrine of mutual mistake--one of the exceptions to the parol evidence rule--to deny Naimo's motion.  Its present theory is that we should reform the contract to reflect what "both parties understood": that the non-compete provision "was to continue on after the execution of the Separation Agreement."  (Pl.'s Mem. in Opp'n to Mot. at 12.)

"[R]eformation is available when the parties, having reached an agreement and having then attempted to reduce it to writing, fail to express it correctly in the writing."  Restatement (Second) of Contracts § 155 cmt. a (1981).  The purpose of reformation is "to make a writing express the agreement that the parties intended it should."  Id.  Under Illinois law, "[a] party can obtain a contract reformation by showing through clear and convincing evidence that: (1) there has been a meeting of the minds resulting in an actual agreement between the parties; (2) the parties agreed to reduce their agreement to writing; and (3) at the time the agreement was reduced to writing and executed, some agreed upon provision was omitted or one not agreed upon was inserted either

through mutual mistake or through mistake by one party and fraud by the other." <u>Indiana Ins. Co. v. Pana Cmty. Unit Sch. Dist. No. 8</u>, 314 F.3d 895, 904 (7th Cir. 2002) (citing <u>Alliance Syndicate v. Parsec, Inc.</u>, 741 N.E.2d 1039, 1048 (Ill. App. Ct. 2000)). Mutual mistake is rarely found in commercial transactions between sophisticated parties. <u>Benkovitch v. eMed Monitoring, Inc.</u>, No. 04 C 4393, 2004 WL 2980640, at *2 (N.D. Ill. Dec. 17, 2004).

Plaintiff's reformation theory has appeared for the first time in its response to defendant's motion. There is no indication whatsoever in the complaint that it claims mutual mistake (or, for that matter, any type of mistake) or that it seeks to reform the Separation Agreement and enforce that agreement *as reformed*.[1] All averments of mistake are subjected to the heightened pleading standards of Fed. R. Civ. P. 9(b). <u>Benkovitch</u>, 2004 WL 2980640, at *2 (citing <u>Cagan v. Intervest Midwest Real Estate Corp.</u>, 774 F. Supp. 1089, 1097 (N.D. Ill. 1991)). Plaintiff acknowledges in its surreply that it has not pled mistake in the complaint (*at all,* not merely without particularity*)*, but seeks leave to amend the complaint. Plaintiff submits that "the clear and convincing evidence would demonstrate that" its director of human resources "presented the Separation Agreement to Naimo, and reminded Naimo

---

[1] This is the only way plaintiff could conceivably enforce the non-competition provision because, as discussed <u>supra</u>, the Employment Agreement, the only agreement that contains a non-competition provision, was explicitly superseded by the Separation Agreement.

that he was subject to a noncompetition agreement. Naimo acknowledged that he understood. In a later conversation, after Naimo signed the Separation Agreement, [Naimo was again reminded] of his noncompetition obligations. Naimo again acknowledged those obligations and indicated his intention to comply." (Pl.'s Mem. in Opp'n to Mot. at 4, 14.)

Because the Separation Agreement unambiguously supersedes nearly all of the Employment Agreement, including the non-competition provision, Count IV of the complaint will be dismissed. The dismissal will be without prejudice. Although we are skeptical of plaintiff's ability to allege in good faith that there was a mutual mistake or a unilateral mistake plus fraud, we will allow plaintiff to file an amended Count IV by December 4, 2006. Defendant may plead to the amendment by December 22, 2006. Given our ruling, we need not consider Naimo's alternative argument for dismissal regarding termination not "for cause."

## CONCLUSION

The motion of defendant Michael A. Naimo to dismiss Count IV of the complaint is granted. Count IV of the complaint is dismissed without prejudice, with leave to amend by December 4, 2006. Defendant may plead to the amendment by December 22, 2006.

The case is set for a status hearing on December 13, 2006, at 10:30 a.m. for the parties to report on the progress of discovery.

DATE:        November 16, 2006


ENTER:       _____
             John F. Grady, United States District Judge